NOT FOR PUBLICATION

| | |
|---|---|
| CENDANT CORPORATION, | |
| Plaintiff, | **OPINION** |
| v. | Civ. No. 00-4064 (WHW) |
| E. KIRK SHELTON, | |
| Defendant. | |

**Walls, Senior District Judge**

Plaintiff Cendant Corporation brings this action for contribution against Defendant E. Kirk Shelton to recoup his proportional share of the $3 billion paid by Cendant to settle numerous accounting fraud actions brought against it. Cendant moves for summary judgment on its claims of contribution and asks this Court to award it a judgment against Shelton in the amount of $31,500,000. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court decides this matter on the basis of the written submissions of the parties. Plaintiff's summary judgment motion is granted in part and denied in part.

**FACTUAL BACKGROUND**

**A. The Parties**

Cendant, a Delaware corporation with its principal executive offices in Parsippany, New Jersey, is the product of a December 17, 1997 merger of HFS Incorporated ("HFS") with and into CUC which was then renamed Cendant (the "Merger"). On October 24,

**NOT FOR PUBLICATION**

2005, Cendant publicly announced plans to split itself into four independent companies – one each for Cendant's real estate services, travel distribution services, hospitality services, and vehicle rental businesses. On July 31, 2006, Cendant's hospitality business, Wyndham Worldwide Corporation, and its real estate business, Realogy Corporation, were spun-off to Cendant's shareholders. On August 23, 2006, the sale of Cendant's travel distribution business, Travelport, Inc., was completed. On August 29, 2006, Cendant changed its name to Avis Budget Group, Inc.

Shelton, a citizen and resident of Connecticut, joined CUC in 1981 as a senior vice president, became the company's chief operating officer in 1987, and assumed the title of president in 1996. At the time of the Merger, he was a member CUC's board of directors and the board's executive committee. Following the Merger, Shelton became vice chairman and a director of Cendant. He resigned from the board of directors on July 28, 1998, and Cendant terminated his employment for cause on August 27, 1998.

**B. The Accounting Irregularities**

After the close of trading on April 15, 1998, Cendant issued a press release announcing the discovery of accounting irregularities at certain CUC business units. In this press release, Cendant also announced that it expected to restate its 1997 earnings by about $115 million and that it may restate certain other previous periods. Cendant's stock price declined precipitously in the wake of this announcement. Over the several months that followed, the Audit Committee of Cendant's Board of Directors conducted an extensive investigation into the accounting issues. On July 14, 1998, Cendant issued a press release announcing that the Audit Committee

**NOT FOR PUBLICATION**

investigation was substantially complete and that the amount of 1997 earnings to be restated was higher than estimated on April 15, 1998. Cendant also announced that it would be restating its financial statements for 1995, and 1996. Cendant's stock price again declined in the wake of this announcement. On September 28, 1998, Cendant filed with the SEC restated financial statements for 1995, 1996 and 1997.

**C. The CalPERS Action and Settlement**

Beginning on April 16, 1998, persons who purchased or otherwise acquired shares of CUC and Cendant securities filed scores of securities fraud lawsuits, including class actions, against Cendant based on the accounting irregularities described above. On May 29, 1998, this Court consolidated various of the class actions under the caption In re Cendant Corporation Securities Litigation, Civ. No. 98-1664 (WHW) (the "CalPERS Action"), and appointed lead plaintiffs and lead counsel to represent the putative class. See In re Cendant Corp. Litig., 182 F.R.D. 476, 477 (D.N.J. 1998).

On or about December 14, 1998, the lead plaintiffs in the CalPERS Action filed an Amended Consolidated Class Action Complaint (the "CalPERS Complaint") against Cendant and others, including Shelton, which alleged, inter alia, that Cendant violated Sections 11, 12(a)(2,) and 15 of the Securities Act, Sections 10(b), 14(a), 20(a), and 20A of the Exchange Act and SEC Rules 10b-5 and 14a-9. The CalPERS Complaint alleged that the price of Cendant and CUC securities was artificially inflated because the financial statements issued by CUC and/or Cendant before the April 15, 1998 press release, including the financial statements contained in the Company's annual reports for 1995, 1996, and 1997 and in certain registration statements,

3

**NOT FOR PUBLICATION**

proxy statements and prospectuses, were materially false and misleading and members of the class were damaged as a result.

On March 17, 2000, Cendant entered into a settlement agreement with the CalPERS lead plaintiffs to resolve all claims asserted against Cendant and its present and former officers and directors in the CalPERS Action. Pursuant to the settlement agreement, members of the CalPERS class would release all claims they had or could have asserted based upon transactions in CUC, HFS, or Cendant publicly-traded securities (except PRIDES investment units) during the class period against any of the defendants in the CalPERS Action. The CalPERS settlement released Kirk Shelton, Walter A. Forbes, Cosmo Corigliano, and Anne M. Pember. In exchange, Cendant agreed to pay, for the benefit of the class, $2,851,500,000 in cash plus fifty percent of any net recovery it obtained on the claims it has asserted against Ernst &Young LLP arising out of the accounting irregularities (the "CalPERS Settlement").

The CalPERS Settlement was approved by the Court on August 15, 2000. See In re Cendant Corp. Sec. Litig., 109 F.Supp.2d 235, 239 (D.N.J. 2000), aff'd, 264 F.3d 201 (3d Cir. 2001). Cendant has fulfilled its payment obligations under the CalPERS Settlement.

**D. The PRIDES Action and Settlement**

On or about June 15, 1998, Welch & Forbes, Inc. filed an action against Cendant and others, including Shelton, on behalf of a putative class of person who purchased or otherwise acquired Cendant Income PRIDES and/or Growth PRIDES (collectively, "PRIDES"). Welch & Forbes was appointed to act as lead plaintiff on behalf of all members of the putative PRIDES class in the action styled In re Cendant Corporation

4

**NOT FOR PUBLICATION**

PRIDES Litigation, No.98-cv-2819 (WHW) (the "PRIDES Action").

On or about November 11, 1998, Welch & Forbes filed an Amended and Consolidated Complaint Respecting the PRIDES Claims (the "PRIDES Complaint"). The PRIDES complaint alleged, inter alia, that Cendant violated Sections 11 and 15 of the Securities Act, Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5. The operative PRIDES complaint claimed that the price of PRIDES securities was artificially inflated because the financial statements of CUC and/or Cendant contained in the registration statement and prospectus under which the PRIDES were issued, including financial statements for year-end 1995 and 1996 and for the 9-months ending September 30, 1997, were materially false and misleading and that members of the class were damaged as a result.

On March 17, 1999, Cendant entered into a settlement agreement with the PRIDES Action lead plaintiff in to resolve that portion of the PRIDES Action relating to purchases of PRIDES during the period February 24, 1998, through and including April 15, 1998. Pursuant to the settlement agreement, all claims that had or could have been asserted by any member of the PRIDES class based upon or arising from any purchase of PRIDES on or before April 15, 1998 against any of the defendants in the PRIDES Action, including Shelton and Walter A. Forbes, would be settled and released in exchange for Cendant's agreement to issue new securities, collectively valued at approximately $340 million (the "PRIDES Settlement"). On June 7, 1999, the PRIDES Settlement was approved by the Court and Cendant fulfilled its obligations under the settlement agreement by distributing to class members new securities with an aggregate value of $300 million.

**NOT FOR PUBLICATION**

**E. The Criminal Action Against Shelton**

On February 28, 2001, a federal grand jury issued an indictment charging Shelton with six counts of securities fraud and additional counts alleging conspiracy to commit securities fraud, mail fraud, wire fraud, and making false statements to the SEC.  On December 11, 2002, a superseding indictment (the "Indictment") was filed alleging identical claims.  The counts of securities fraud charged arose out of substantially the same facts as alleged against Cendant in the CalPERS Action and the PRIDES Action, i.e., that Cendant's (CUC's) 1995, 1996, and 1997 annual SEC filings included materially false and misleading financial statements.  The Indictment alleged, inter alia, that Shelton, while a top executive at CUC and Cendant, knowingly participated in, and directed, numerous fraudulent accounting practices in order to artificially inflate the company's earnings.  These fraudulent numbers were then included, with Shelton's knowledge and express authorization (i.e., signature), in annual reports, registration statements and other SEC filings.

The criminal action against Shelton, captioned <u>United States v. Walter A. Forbes & E. Kirk Shelton</u>, No. 02-cr-264 (AWT) (D. Conn.) (the "Criminal Action"), was tried before a jury in Hartford, Connecticut.  After approximately six months of trial and deliberations, the Criminal Action concluded on January 4, 2005, when the jury found Shelton guilty on all twelve counts of the indictment, including the six counts of securities fraud that mirrored the violations asserted against Cendant in the civil cases.  Shelton's conviction was affirmed by the United States Court of Appeal for the Second Circuit.  <u>United States v. Shelton</u>, No. 05-cr-4342, 2006 WL 3406840 (2d Cir. Nov. 22, 2006).

**NOT FOR PUBLICATION**

**F. Cendant's Contribution Claim Against Shelton**

Both the CalPERS Settlement and the PRIDES Settlementcontained provisions preserving any and all claims for contribution Cendant is permitted by law to pursue against any other person, including Shelton, who may also have been liable for the respective classes' injuries. Following court approval of both settlements, Cendant filed the complaint in this action asserting claims against Shelton for, inter alia, contribution for settlement of the PRIDES Action and contribution for settlement of the CalPERS Action, pursuant to Section 11(f) of the Securities Act and Section 21D(f)(8) of the Exchange Act. Cendant seeks to recover as contribution an amount equal to the product of (a) Shelton's proportionate share of the responsibility and (b) the value of the settlement consideration paid by Cendant in the settlements.

**G. Others Alleged to be Liable for the Fraud at CUC and Cendant**

Claims have been asserted against numerous people and entities alleging that they were responsible for the fraud at CUC and Cendant. On July 18, 2000, Cendant filed Amended Cross-Claims ("Cross-Claims") against Defendant Ernst & Young, LLP ("E&Y") in connection with the actions consolidated under the caption, In re: Cendant Securities, Litig., Master File No.: 98-cv-1664 (WHW) ("the Consolidated Action"). Cendant's Cross-Claims include the following causes of action: Common Law Fraud, Negligence, Breach of Contract, Breach of Fiduciary Duty, and Contribution.

Cendant also alleged in its Cross-Claims, inter alia, that it "incurred liability to the CalPERS plaintiffs and was obligated to settled with those plaintiffs for a sum of approximately

**NOT FOR PUBLICATION**

$2.8 billion, which liability would not have arisen had E&Y properly audited the aforesaid financial statements of CUC and CMS." Cross-Claims ¶¶152-156.

On May 1, 2000, E&Y filed a Counterclaim and Third Party Complaint in the action captioned Cendant Corporation v. Ernst & Young, LLP, No. 99-cv-5988 (WHW). E&Y's Third Party Complaint named as defendants Cendant Membership Services, Inc.; Walter A. Forbes; E. Kirk Shelton; Cosmo Corigliano; Anne M. Pember; Hentry R. Silberman; Michael P. Monaco; Scott E. Forbes; James E. Buckman; Casper Sabatino; Stephen P. Speaks; Kevin T. Kearny; and Mary Sattler.

On August 22, 1001, Plaintiff, in the action captioned George M. Kevlin v. Cendant Corp., No. 00-9267, filed its Fifth Amended Original Petition in the District Court of Dallas County, Texas. This Petition asserted claims relating to the fraud at CUC and Cendant against Cendant Corp; E&Y; FISI*Madison Financial Corporation; Kenneth Wilchfort; Walter Forbes; E. Kirk Shelton; Cosmo Corigliano; Anne Pember; Casper Sabatino; Joseph Cappareli; Louis Scerra; and Ernst & Young, LLP a/k/a Ernst & Young UK.

On January 30, 2007, a Judgment was entered against Cosmo Corigliano in United States v. Cosmo Corigliano, No. 02-cr-379 (AHN). Mr. Corigliano was adjudicated guilty of (i) conspiracy to commit mail and wire fraud and make false statements in reports to be filed with the SEC and (ii) wire fraud.

On January 29, 2007, a Judgement was entered against Anne Pember in United States v. Pember, No. 02-cr-380 (AHN). Ms. Pember was adjudicated guilty of conspiracy to commit mail and wire fraud.

8

**NOT FOR PUBLICATION**

On January 29, 2007, a Judgment was entered against Casper Sabatino in <u>United States v. Sabatino</u>, No. 02-cr-378 (AHN). Mr. Sabatino was adjudicated guilty of aiding and abetting wire fraud.

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See <u>id.</u> at 248. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See <u>Celotex v. Catrett</u>, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, a non-movant must present more than a mere scintilla of evidence in his favor. <u>Woloszyn v. County of Lawrence</u>, 396 F.3d 314, 319 (3d Cir. 2005). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. <u>Shields v. Zuccarini</u>, 254 F.3d 476, 481 (3d Cir. 2001). The material fact or facts become genuine when a reasonable trier of fact could

**NOT FOR PUBLICATION**

render a verdict for the non-moving party.  Healey v. New York Life Ins. Co., 860 F.2d 1209, 1219 n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 S.Ct. 2449 (1989).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

**DISCUSSION**

    **1.  Liability of E. Kirk Shelton**

Cendant seeks summary judgment on Shelton's liability for contribution to Cendant. Cendant's contribution claims arise out of its respective settlements with the PRIDES and CalPERS classes.  Cendant argues that now that Shelton's criminal conviction has been affirmed by the Second Circuit, Shelton's liability to Cendant is established as a matter of law and that summary judgment is appropriate.

To prevail on a claim for contribution under the Securities Act and Exchange Act, the claimant must prove each element of a primary securities fraud violation on the part of the defendant.  See Steed Finance LDC v. Laser Advisers, Inc., 258 F.Supp.2d 272, 277 (S.D.N.Y. 2003).  Under the doctrine of collateral estoppel, or issue preclusion, a final determination by a court of competent jurisdiction on an issue is conclusive in a subsequent suit based on a cause of action involving a party or one in privity with that party.  See Delaware River Port. Auth. v. Fraternal Order of Police, 290 F.3d 567, 572 (3d Cir. 2002).  A four-pronged test is used to

**NOT FOR PUBLICATION**

determine whether collateral estoppel should bar re-litigation of an issue:

> (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudicaiton; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.

Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 505 (3d Cir. 1992).

Cendant argues, and Shelton effectively concedes, that these requirements are met in the present case. The issue presented in the criminal action is precisely the issue before this Court – whether Shelton violated Section 10(b) of the Exchange Act and SEC Rue 10b-5 and knowingly directed and participated in the dissemination of materially false financial statements, including CUC financial statements challenged by the plaintiffs in the CalPERS and PRIDES actions, to the SEC and the investing public. Second, there was a final judgment on the merits in the criminal action when the a guilty verdict was handed down on January 4, 2005. This conviction was affirmed by the Second Circuit. United States v. Shelton, 2006 WL 3406840. Third, the party against whom preclusion is sought, E. Kirk Shelton, was an actual party in the Criminal Action. Finally, Shelton had a full and fair opportunity to litigate this issue during the trial and appeal. Accordingly, the Court grants Cendant's motion for summary judgment with respect to Shelton's liability to Cendant for contribution.

**2. Amount of Contribution**

Cendant asks this court to enter an order requiring Shelton to pay Cendant $31,500,000 in

**NOT FOR PUBLICATION**

contribution, or 1% of the $3,150,000,00 Cendant paid to settle the CalPERS Action and the PRIDES Action. Cendant argues that Shelton cannot contest that his liability was at least 1%. In contrast, Shelton maintains that the amount of his proportionate liability is a disputed issue of material fact which cannot be properly determined on summary judgment. He also argues that the reasonableness of the settlement is in dispute, precluding summary judgment.

        a. Proportionate Share of Liability

Shelton argues that his proportionate share of liability is in dispute and Cendant's 1% figure is an unsupported guess. He argues that it is too early in the litigation to assign proportionate liability in light of the large number of third party defendants who allegedly share the blame for perpetuating the fraud.[1] He suggests that an expedited summary judgment is inappropriate given that the trial of the Consolidated Actions is set for March 4, 2008 and proportionate liability as to all those allegedly involved could be determined then.

The Court is unpersuaded by Shelton's argument that his proportionate share of the liability is in dispute. Cendant has not chosen an arbitrary figure but proposed a minimum amount of responsibility which no reasonable jury would dispute. Given Shelton's position at CUC as president and chief operating officer and his criminal conviction for directing the fraud alleged in both the CalPERS and PRIDES actions, his implicit argument that the liability of other third party defendants would somehow reduce his liability below 1% is implausible. Moreover,

---

[1] Shelton names former CUC executives who have pled guilty to fraud such as Cosmo Corigliano, Anne Pember, Casper Sabatino. Shelton notes that cross claims have been asserted against E&Y, Henry Silverman, Micale Monaco, and Scott Forbes. Claims have also been asserted in the Cendant litigation against E&Y auditors and as well as present and former employees from various CUC business units.

**NOT FOR PUBLICATION**

Shelton has not come forward with any set of facts which would suggest that his exposure is less than 1%. Summary judgement is appropriate if no reasonable jury could return a verdict for the non-moving party. See Anderson, 477 U.S. at 251-52. The Court concludes that there is no issue of material fact regarding whether Shelton was at least 1% liable for the fraud at issue in the CalPERS and PRIDES Actions. Accordingly, summary judgment is granted with respect to Shelton's 1% proportionate liability.

                        b. Reasonableness of the Settlement

      Second, Shelton challenges the reasonableness of the settlement payments that Cendant seeks to recover from Mr. Shelton. When it was approved, the CalPERS settlement represented the largest settlement amount paid to settle a securities class action. Shelton argues that a jury should be entitled to question whether Cendant overpaid to settle this action. Shelton points out that there were a great many considerations – litigation risks, business strategy, shareholder confidence, stock price, and other factors – that contributed to the decision to settle the lawsuits. He points to the December 7, 1999 SEC Form 9-K filing with the SEC in which Cendant stated that it expected to generate tax benefits from the settlement. Shelton maintains that he should not be required to finance Cendant's tax planning activities. Similarly, Shelton points out that in settling the CalPERS and PRDES Action, Cendant paid in excess of $3 billion to obtain release of plaintiffs' claims not only on behalf of itself but in favor of all former HFS and CUC officers and directors. Shelton argues that while Cendant is entitled to seek liability from him for amounts that it paid to extinguish his liability, it is not entitled to recover from Shelton for amounts that it paid to settle the claims of others.

**NOT FOR PUBLICATION**

As Shelton points out, the Court has not considered whether the settlements were reasonable or fair to the settling party. Rather, in approving the CalPERS settlement, the Court considered whether the settlement was "fair, reasonable, and adequate" to the respective classes under Fed. R. Civ. P. 23 and concluded that it was. See In re Cendant Securities Litig., 109 F.Supp.2d 273 (D.N.J. 2000). Similarly, in affirming the CalPers settlement, the Third Circuit held that this Court had properly considered "whether the settlement is fair, reasonable, and adequate to the [settling] class [plaintiffs]." In re Cendant Corp. Securities Litig: Martin Deutch, 264 F.3d 286, 293 (3d Cir. 2001).

The Court finds that Shelton raises an issue of triable fact regarding whether Cendant paid more than was reasonable to settle either of the CalPERS or PRIDES actions. The Court also finds that Shelton should be allowed to challenge the portion of the settlement paid to extinguish the liability of other third party defendants. Accordingly, summary judgement is denied with respect to the amount of liability owed by Shelton.

**CONCLUSION**

Plaintiff's summary judgment motion is granted in part and denied in part. An appropriate Order will follow.

                                                    s/ William H. Walls
                                                  **William H. Walls, U.S.D.J.**

**NOT FOR PUBLICATION**

———

15